**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| KCI AUTO AUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:17-cv-06086-NKL |
| | ) | |
| ALONZO ANDERSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Pending before the Court is Plaintiff KCI Auto Auction's Motion for Summary Judgment, Doc. 105. For the following reasons, the motion is granted.

## I. Background[1]

Plaintiff KCI Auto Auction, Inc. is a wholesale motor vehicle auction located in Kansas City, Missouri. In January 2014, Defendants Barry Ristick, Angelo Jefferson, and Tom Ephrem visited KCI on behalf of the used car business, Defendant Lucky 7 Used Cars, LLC, seeking to gain access to KCI's weekly auctions. These Defendants were told that in order to participate in the auctions, KCI would require proof that they are licensed vehicle salespersons and/or a licensed vehicle dealer, and that their used vehicle dealership was registered with AuctionACCESS.[2] KCI also told these Defendants that they must obtain a dealer card and salesperson badges, and agree to all of KCI's auction policies and terms of sale.

---

[1] In ruling on a motion for summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and that party receives the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

[2] AuctionACCESS is a dealer credentialing system for the wholesale auto auction industry. *See* https://www.auctionaccess.com/about-us.

In April 2014, these Defendants completed a registration application with KCI, in the name of "Lucky 7 Used Cars." The application included a dealership authorization form that listed Defendant Alonzo Anderson as the dealership's owner, and listed Angelo Jefferson, Jason Ephrem, Barry Ristick, and Tom Ephrem, as the dealership's representatives. These Defendants also provided KCI with the Used Vehicle Dealer number that they would be operating under, which was issued by the State of Kansas, and showed that they had registered their dealership with AuctionACCESS. These Defendants also provided an "Auction Guarantee," signed and executed by Anderson, which represented that he was the owner of Lucky 7 Used Cars, and that in consideration of KCI allowing Lucky 7 Used Cars to participate at the auctions, he personally guaranteed full payment of any debts. Upon receiving the Defendants' registration application, KCI permitted them to participate in the auctions.

In June 2014, Tom Ephrem and Barry Ristick approached KCI, on behalf of Anderson and Lucky 7 Used Cars, and established a "floor plan" account (the "Lucky 7 Account"). According to the agreement, which was not reduced to writing, KCI would allow the Defendants to purchase vehicles without full payment at the time of sale, and instead required only that they pay the amounts due within sixty days. If the vehicles were not paid for at the time of sale, however, KCI would assess a service charge. The Defendants were also permitted to take immediate possession of the vehicles, but KCI retained the original titles, and the Defendants agreed not to sell or transfer the vehicles until full payment was made and the titles were transferred.

Over the next three years, the Defendants purchased 293 used vehicles on the Lucky 7 Account, for which the sales price and buyers fees totaled $1,156,205.62. Although there is an individual sale contract for each purchase, all of the Defendants' purchases were made according

to the floor plan, and the Defendants often made payments on the Lucky 7 Account that were generic, and did not reference any specific transaction. Beginning in 2015, the Lucky 7 account became delinquent. However, over the course of 2015 and 2016, Barry Ristick and Tom Ephrem regularly called and personally visited KCI, and always made promises, assurances, and representations that they would get the account paid in full soon. In reliance on these representations, KCI continued to allow the Defendants to participate at the auctions. In early 2017, KCI finally prohibited the Defendants from attending any more auctions, and demanded payment of the outstanding balance on the Lucky 7 Account.

In July 2017, with the Lucky 7 Account balance at $248,880.38, KCI brought suit against Alonzo Anderson, Danny Ephrem, David Ephrem, Jason Ephrem, J.J. Ephrem, Tom Ephrem, Angelo Jefferson, and Barry Ristick, as well as Lucky 7 Used Cars, L.L.C., Lucky 7 Discount Auto Sales LLC, and Quality Used Cars, LLC. In December, 2017, the parties notified the Court that KCI had reached a settlement with Defendants Tom Ephrem, David Ephrem, Danny Ephrem, Barry Ristick, Angelo Jefferson, and Quality Used Cars, LLC (the "Settling Defendants"). Doc. 89. In January, 2018, pursuant to the settlement agreement, the Court entered a consent judgment against the Settling Defendants. Doc. 97. One week later, the Court entered a default judgment against Lucky 7 Used Cars, L.L.C. and Lucky 7 Discount Auto Sales LLC, Doc. 100, and KCI voluntarily dismissed Defendants Jason Ephrem and J.J. Ephrem from the suit. Docs. 102, 103. Thus, there is only one defendant remaining, Alonzo Anderson, who proceeds *pro se*.

## III. Discussion

KCI seeks summary judgment against Anderson on nine claims: Breach of Contract, Action on Account, Account Stated, Fraudulent Misrepresentation, Fraudulent Conveyance,

Unjust Enrichment and Quantum Meruit, Conversion, Negligence Per Se, and Alter Ego/Piercing the Corporate Veil. The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To obtain summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, then the non-moving party "must set forth specific facts sufficient to raise a genuine issue for trial and cannot rest on allegations in the pleadings." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir.1997)).

In deciding whether to grant summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989). Both parties, however, must support their assertions "by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Anderson does not address KCI's section of uncontroverted facts, nor does his response provide its own. Moreover, despite relying on new facts, Anderson supports only some of his assertions by swearing to them in a single, self-serving affidavit.

KCI has also represented to the Court that it submitted to Anderson a written request to admit, which he failed to answer. When a party serves a written request to admit, every matter included in that request "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to

the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Anderson does not dispute KCI's contentions with regard to the request to admit, and has not moved for the Court to withdraw or amend the admissions. Accordingly, the Court must treat the admissions as conclusively established. *See* Doc. 106-2 (KCI's Request for Admissions).

**A. Count I: Breach of Contract**

To obtain summary judgment on its breach of contract claim, KCI must show that there is no genuine dispute as to the material facts that establish "(1) the existence of a valid contract; (2) [Anderson's] obligation under the contract; (3) a breach by [Anderson] of that obligation; and (4) resulting damages." *Clayborne v. Enter. Leasing Co. of St. Louis, LLC*, 524 S.W.3d 101, 106 (Mo. Ct. App. 2017) (citing *C-H Building Associates, LLC v. Duffey*, 309 S.W.3d 897, 899 (Mo. Ct. App. 2010).

KCI maintains that it has a valid contract with Anderson, imposing mutual obligations on the parties, as a result of the Lucky 7 Account "floor plan" and Anderson's personal guarantee. In support, KCI provides the affidavit of Tom Ephrem, Danny Ephrem, David Ephrem, Barry Ristick, and Angelo Jefferson, Doc. 106-1, and the request for admissions that Anderson failed to respond to. Doc. 106-2. According to both the affidavit and the unanswered request for admissions, Barry Ristick and Tom Ephrem approached KCI and set up the Lucky 7 Account floor plan agreement on behalf of Anderson. Doc. 106-1, p. 4; Doc. 106-2, p. 15. Under the agreement, the Defendants would purchase vehicles on Anderson's behalf, and charge them to the Lucky 7 Account. The Defendants would then be allowed to take immediate possession of the vehicles, and Anderson would be permitted up to 60 days to pay the full sale price. Doc.

106-1, p. 8; Doc. 106-2, p. 15. If the Defendants did not pay for the vehicles at the time of sale, KCI would assess a service charge based on the amount of time between the sale and payment. Doc. 106-1, p. 4. According to both the affidavit and the unanswered request for admissions, Barry Ristick and Tom Ephrem were acting on behalf of and as agents for Anderson when they agreed that he would be responsible and obligated on the Lucky 7 Account. Doc. 106-1, p. 4.

In addition to the orally agreed to Lucky 7 Account floor plan, KCI also bases its breach of contract claim on a document entitled "KCI Kansas City Auction Guarantee" (the "Auction Guarantee"). Doc. 106-2, p. 62. According to the Auction Guarantee, which is signed by Anderson and was delivered to KCI with the registration forms in April 2014, in consideration of KCI allowing the Defendants to participate at the auctions, Anderson personally guaranteed full payment of any debts of Lucky 7 Used Cars to KCI. Doc. 106-4, p. 46.

Anderson first argues that the Auction Guarantee and 293 sales contracts are forged. Doc. 111-1, p. 2. This is the first time that Anderson has raised any issues of forgery or falsified documents, however, and indeed on several prior occasions he has affirmed the Guarantee's authenticity. In his answer to the First Amended Complaint, Anderson states that "[a]ll documents that Defendant faxed or sent to KCI (Plaintiff) are true and correct." Doc. 81, p. 2. Additionally, KCI included the Auction Guarantee in its request for admissions, and requested that Anderson admit its authenticity. Doc. 106-2, pp. 11-12. Anderson did not respond, much less raise any claim of forgery at that time, and pursuant to Federal Rule of Civil Procedure 36(a)(3) admitted the document's authenticity. Although he supports his argument with an affidavit, it does not create a disputed issue of fact because his admission is conclusive. *See Quasius v. Schwan Food Company*, 596 F.3d 947 (8th Cir. 2010).

Anderson also argues that Tom Ephrem and Angelo Jefferson had no authority to enter into any agreements on his behalf. However, he does not include this contention in his affidavit, and offers no evidence to support it, let alone any that overcomes KCI's affidavits. Tom Ephrem and Barry Ristick have both sworn under oath that they were acting as Anderson's agents when they set up the Lucky 7 Account floor plan, and when they entered into the purchase agreements on the account. Doc. 106-1, pp. 4-6. Additionally, Anderson failed to deny that Tom Ephrem and Barry Ristick were his agents and had his authority to enter into the Lucky 7 Account floor plan with KCI when he was served with KCI's request for admissions. Doc. 106-2, p. 14. Anderson's completely unsupported argument that there was no authority to enter into the agreements on his behalf does nothing to refute KCI's evidence.

Finally, Anderson argues that the Mo. Rev. Stat. § 432.047 required the Lucky 7 Account floor plan agreement to be in writing. However, Section 432.047 states that "*[a] debtor* party may not maintain an action upon or a defense . . . ." Mo. Rev. Stat. § 432.047(2) (emphasis added). It also states that "[n]othing contained in this section shall affect the enforceability by a creditor of any . . . agreement . . . evidencing or creating an obligation for the payment of money or other financial accommodation, lien, or security interest." Mo. Rev. Stat. § 432.047(4). Here, KCI is the creditor, not the debtor, and thus it is unclear that the statute applies. *See BancorpSouth Bank v. Paramont Properties, L.L.C.*, 349 S.W.3d 363, 368 (Mo. Ct. App. 2011) ("The Missouri Credit Agreement Statute acts as a statute of frauds to protect banks from losing their right to enforce a loan according to the terms of the written loan documents, if they informally attempt to accommodate debtors."). Even if the statute does apply, however, Anderson is unable to overcome the "Kansas City Auction Guarantee," which is in writing,

signed by Anderson, and personally guarantees all of Lucky 7 Used Cars' debts. Doc. 106-2, p. 62.

The final two elements of KCI's breach of contract claim are undisputed. At the time this lawsuit was filed, the Lucky 7 Account balance was $248,880.38, which Anderson refused to pay. In addition to the outstanding balance, KCI also suffered damages in the form of attorney's fees and costs spent attempting to collect. Anderson has failed to overcome KCI's showing that there is no genuine dispute of material facts, and establish that he is liable. Therefore, summary judgment must be entered against Anderson on Count I, breach of contract, in the amount of $443,957.85.

**B. Count II: Action on Account**

KCI also seeks summary judgment on its claim for action on account, which is based on the Lucky 7 Account floor plan agreement. To prevail, KCI must show that there is no genuine dispute as to the material facts establishing that "1) [Anderson] requested plaintiff to furnish merchandise or services, 2) [KCI] accepted [Anderson's] offer by furnishing such merchandise or services, and 3) the charges were reasonable." *Helmtec Industries, Inc. v. Motorcycle Stuff, Inc.*, 857 S.W.2d 334, 335 (Mo. Ct. App. 1993).

Here, KCI relies on the same evidence that supported its breach of contract claim: the affidavit of Tom Ephrem, Danny Ephrem, David Ephrem, Barry Ristick, and Angelo Jefferson, and the unanswered requests for admission. Docs. 106-1, 106-2. According to the affidavit and unanswered requests for admission, the Defendants approached and solicited KCI, as Anderson's agents, and requested that KCI agree to establish the Lucky 7 Account floor plan for Anderson. KCI accepted the request, and furnished 293 vehicles to Anderson. The affidavit and requests

for admissions also conclusively establish that the charges on the Lucky 7 Account were "reasonable, true and accurate." Doc. 106-1, p. 9.

Anderson does not dispute that KCI furnished the vehicles to Anderson, or that the charges were reasonable. His only argument relevant to KCI's action on account is the same as was discussed above, that his agents did not have any authority to enter into the agreements on his behalf. However, for the same reasons as discussed, Anderson's arguments are insufficient. Therefore, summary judgment must be entered in KCI's favor on Count II, action on account, in the amount of $443,957.85.

**C. Count IV: Account Stated**

KCI also moves for summary judgment on its claim for account stated. "An account stated is an agreement between parties, having had previous financial transactions, that a balance struck is correct and due between them, and a promise by the debtor, either express or implied, to pay the balance." *Ozark Mountain Timber Prod., Inc. v. Redus,* 725 S.W.2d 640, 648 (Mo. Ct. App. 1987) (citing *Chisler v. Staats,* 502 S.W.2d 424 (Mo. Ct. App. 1973)). Partial payment by a debtor without dispute constitutes an implied promise to pay the balance. *Chisler*, 502 S.W.2d at 426. Here, it is undisputed that a debtor-creditor relationship existed between KCI and Anderson, and that after the Lucky 7 Account was outstanding, Anderson's agents made express promises to pay the amounts owed. KCI demanded payment when $254,380.38 became due, and Anderson's agents promised to pay. Indeed, Anderson's agents made partial payments to KCI on several occasions, including more than one year after the account was delinquent, due and payable, all without any objection to the amounts due under the account by Anderson or any of his agents. Anderson's agents made several express promises to pay the balance, and moreover,

by tendering partial payments to KCI, Anderson made an implied promise to pay the rest of the balance.

Once again, the only argument that Anderson raises that is relevant to Count IV is his denial that his agents had the authority to enter into the Lucky 7 Account floor plan. For the reasons already discussed, Anderson's argument is insufficient. Therefore, summary judgment is granted on Count IV, account stated, in the amount of $443,957.85.

**D. Count V: Fraudulent Misrepresentation**

KCI also seeks summary judgment on its claim of fraudulent misrepresentation. Fraudulent misrepresentation requires:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438–39 (8th Cir. 2013) (quoting *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010)). KCI seeks to hold Anderson liable for the fraudulent acts of his agents. "The universally recognized rule is that the principal is civilly liable for the . . . fraud . . . of his agent in the course of his employment . . . ." *Milton v. Missouri Pac. R. Co.*, 193 Mo. 46, 91 S.W. 949, 951 (1906); *see also Premium Fin. Specialists, Inc v. Hullin*, 90 S.W.3d 110, 114 (Mo. Ct. App. 2002) ("The proper inquiry is, whether the act was done in the course of the agency and by virtue of the authority as agent. If it was, then the principal is responsible, whether the act was merely negligent or fraudulent.") (quoting *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 84 (Mo. 1967)).

KCI bases its fraudulent misrepresentation claim on the representation that if the Defendants received some of the titles from KCI for the vehicles that were purchased, but still owed payment on, then Anderson would resume making payments on the Lucky 7 Account.

It is undisputed that the elements of fraudulent misrepresentation are established with regard to Tom Ephrem and Barry Ristick. These Defendants admit in their affidavit that they made the representations, that those representations were false, that they knew the representations were false when they made them, and that they intended for KCI to act on the false statements. Doc. 106-1, p. 12. KCI, in an affidavit prepared by assistant general manager Steve Goettling, states that the representations were material, KCI did not know that the representations were false, and that KCI relied on the promises and assurances when they provided the titles to some of the vehicles to defendants. Doc. 106-4, p. 19. It is also undisputed that KCI had a right to rely on Tom Ephrem and Barry Ristick's representations. As a result of the false representations, KCI provided the titles to vehicles that were not paid for, and Anderson's agents then sold the vehicles and kept the proceeds and profits without making payment to KCI, which caused KCI damages.

Anderson does not specifically oppose summary judgment on the fraudulent misrepresentation claim. Although he maintains that Tom Ephrem and Angelo Jefferson had no authority to enter into the floor plan agreement, he does not specifically refute that they were his agents. Indeed, he has admitted as much by virtue of failing to respond to KCI's requests for admission. It is undisputed that Tom Ephrem and Barry Ristick made the false representations during their business dealings with KCI, done in the course of their agency and by virtue of their authority as Anderson's agent. Therefore, Anderson is liable for his agents' fraudulent actions. *See Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 84 (Mo. 1967) (Principal is liable

for fraud by agent in course of agency and for benefit of principal.). Summary judgment is granted in favor of KCI on Count V, Fraudulent Misrepresentation, in the amount of $443,957.85.

**E. Count VI: Fraudulent Conveyance**

KCI's claim for fraudulent conveyance is based on the Missouri Uniform Fraudulent Transfer Act (MUFTA). Mo. Rev. Stat. §§ 428.005 to 428.059. Under the MUFTA, to set aside a transfer as fraudulent,

> it is necessary to show that the transfer was made with an intent to hinder, delay, or defraud creditors. Intent to defraud must be shown by clear and convincing evidence. Fraudulent intent is rarely proven by direct evidence; thus, it is acceptable in Missouri courts to determine the presence of fraud by considering particular badges of fraud. The badges of fraud include: 1) a conveyance to a spouse or near relative; 2) inadequacy of consideration; 3) transactions different from the usual method of transacting business; 4) transfers in anticipation of suit or execution; 5) retention of possession by the debtor; 6) the transfer of all or nearly all of the debtor's property; 7) insolvency caused by the transfer; and 8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. For a transfer to be found fraudulent, several indicia of fraud must be shown. More than one badge of fraud must be present.

*Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo. Ct. App. 2010) (internal citations omitted).

The undisputed facts of this case support entry of summary judgment against Anderson. Anderson does not dispute that he transferred the Lucky 7 LLCs' assets, including most or all of the vehicles purchased from KCI without payment, to himself and others with the intent to avoid KCI. Anderson also does not dispute that he siphoned the income and profit from the sales and transfers of the vehicles purchased from KCI, which caused the Lucky 7 LLCs to become insolvent, and without sufficient capital and income so that it was unable to pay its debts. Such transfers exemplify "several indicia of fraud." *Id.* Anderson's transfers were often to himself or his business associates, they were in anticipation of KCI's execution of a judgment against the

Lucky 7 LLCs, Anderson retained possession of most assets even after transfer, he transferred "all or nearly all" of the Lucky 7 LLCs' property, and caused the LLCs' insolvency. Moreover, Anderson offers no rebutting evidence surrounding the transfers.

If, as here, fraud is sufficiently established, the MUFTA provides that a creditor may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;
>
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>
> (a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>
> (b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>
> (c) Any other relief the circumstances may require.

Mo. Rev. Stat. § 428.039.1. KCI seeks to invoke the statute's offer of "any other relief the circumstances may require." KCI argues that the most equitable solution is to enter an Order holding Anderson liable for actual damages in the amount of $426,831.60, which is the amount of the default judgment entered against Lucky 7 Used Cars, LLLC and Lucky 7 Discount Auto Sales LLC. The Court agrees. Summary judgment is granted for KCI on Count VI, fraudulent conveyance, against Anderson in the amount of $426,831.60.

KCI also seeks punitive damages in the amount of $1,000,000, because Anderson's conduct was so egregious, and the harm that he did was intentional and deceitful, and it involved repeated actions over years of intentionally and purposefully defrauding KCI. The Court

declines to award punitive damages because KCI is asking for summary judgment, not a finding that punitive damages are warranted.

**F. Count VII: Unjust Enrichment and Quantum Meruit**

KCI seeks summary judgment on Count VII only in the event it does not prevail on its breach of contract claim. Because the Court grants summary judgment on KCI's breach of contract claim, it need not address Count VII, unjust enrichment and quantum meruit.

**G. Count VIII: Conversion**

KCI also seeks summary judgment against Anderson on its claim for conversion. "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Herron v. Barnard*, 390 S.W.3d 901, 908 (Mo. Ct. App. 2013) Conversion requires proof of three elements: "(1) the plaintiff 'owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession.'" *Id.* at 909.

It is undisputed that in accordance with the Lucky 7 Account floor plan agreement, KCI was to retain possession of the original title of the vehicles until it received payment in full for the sale price, buyer fee, and all fees and charges due for the vehicles. It is also undisputed that the vehicles were not to be sold or transferred to any party until full payment was received, and the title was transferred. Indeed, KCI maintained a security interest in the vehicles until they were paid for, and therefore had a right to possess the vehicles that Anderson defaulted on. Anderson does not dispute that he sold and transferred vehicles to third parties without making full payment to KCI. By selling the vehicles, Anderson deprived KCI of their right to possession of the vehicles.

Anderson has failed to show that there is any genuine issue of material fact with regard to Count VIII, conversion, and therefore summary judgment is granted for KCI in the amount of $443,957.85.

**H. Count XIII: Negligence Per Se**

KCI argues that it is entitled to judgment against Anderson as a matter of law on its claim for negligence per se. KCI bases its claim on Mo. Rev. Stat. § 417.200, which states

> That every name under which any person shall do or transact any business in this state, other than the true name of such person, is hereby declared to be a fictitious name, and it shall be unlawful for any person to engage in or transact any business in this state under a fictitious name without first registering same with the secretary of state as herein required.

For the violation of a statute to constitute actionable negligence, there must be "a violation of the statute," the injured party must be "within the class of persons intended to be protected by the statute," the injury must be "of such character as the statute . . . was designed to prevent," and the violation of the statute must be "the proximate cause of the injury." *Hartenbach v. Johnson,* 628 S.W.2d 684, 687 (Mo. Ct. App. 1982).

KCI maintains that Anderson did business with KCI under several fictitious names,[3] without registering any with the Missouri Secretary of State. In support, KCI presents several registration forms that Anderson completed, in which he states that he is the owner of Lucky 7 Used Car Sales LLC and Lucky 7 Used Cars, which are not actual entities. Doc. 106-2, pp. 50, 53. KCI argues that Anderson violated Mo. Rev. Stat. § 417.200 by failing to register the names as fictitious with the office of the Missouri Secretary of State.

Anderson does not dispute that he failed to register the fictitious names with the Missouri Secretary of State, and therefore violated Mo. Rev. Stat. § 417.200 by doing business with KCI

[3] Lucky Used Car Sales, Lucky 7 Used Car Sales LLC, Lucky 7 Used Cars, Lucky 7 Used Cars, LLC, Lucky 7 Discount Auto Sales, Lucky 7 Discount Auto Sales LLC, Lucky 7 Used Car Sales LLC, Lucky Seven used Cars, and Lucky 7 Used Cars, L.L.C.

under the fictitious name "Lucky 7 Used Car Sales LLC." KCI, who conducted business with Anderson, is within the class of persons the statute intends to protect. Additionally, KCI's injury, the unpaid account balance for the vehicles furnished, was of such character that the statute was designed to prevent. It is undisputed that Anderson's violation of the statute proximately caused KCI's damages. Accordingly, the Court grants summary judgment on Count XIII, negligence per se, in the amount of $443,957.85.

**I. Count XIV: Alter Ego/Piercing the Corporate Veil**

Finally, KCI seeks to pierce the corporate veil of the judgment debtors, Lucky 7 Used Cars, L.L.C., and Lucky 7 Discount Auto Sales LLC (the "Lucky 7 LLCs"). "The rationale behind piercing the corporate veil is that when a controlling entity or individual misuses the controlled corporation for the controlling entity's own purposes, rather than the purposes of the controlled corporation, it loses the limited liability privilege and the debts of the controlled corporation become the obligations of the controlling entity or individual." *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997) (quoting *Dwyer v. ING Investment Co.*, Inc., 889 S.W.2d 902, 904 (Mo. Ct. App. 1994)). Missouri courts use a three-part test in determining whether to pierce the corporate veil, and hold that an individual and a company are alter egos of each other when:

> 1) The individual completely dominates and controls the finances, policy and business practice of the other corporation.
>
> 2) Such control was for an improper purpose such as "fraud or wrong, or ... unjust act in contravention of [a third parties'] legal rights."
>
> 3) The alter ego's control of the corporation caused injury to the third party.

*Dean v. United States*, 987 F. Supp. 1160, 1164 (W.D. Mo. 1997).

**i. Control**

In determining proof of dominion and control, courts "focus on the transaction at issue." *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354 (Mo. Ct. App. 2015). The first element of the test is satisfied where there is "complete domination, not only of finances, but of policy and business practice *in respect to the transaction attacked* so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Id.* at 371 (quoting *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999)) (emphasis in original). Courts also look to "the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations," when determining whether to pierce the corporate veil. *Greater St. Louis Constr. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc.*, 552 F. Supp. 2d 952, 95-56 (E.D. Mo. 2007). Commingling of assets is also a factor that indicates the corporate form has been ignored. *Commonwealth*, 480 S.W.3d at 372 n.10.

KCI seeks to pierce the corporate veil with respect to the Lucky 7 Account floor plan agreement, and Anderson's siphoning of the income and profit from the sales and transfers of the vehicles he purchased from KCI, which caused the Lucky 7 LLCs to be insolvent and without sufficient capital and income so that they were unable to pay their debts. It is undisputed that Anderson managed the Lucky 7 LLCs, not only with regard to their financial affairs, but also the day-to-day affairs in connection with their transactions with KCI. Additionally, both of the Lucky 7 LLCs were located in the same location, 2759 S. Broadway, Wichita, Kansas, and when it became defunct, Anderson freely transferred the assets of Lucky 7 Used Cars, LLC to Lucky 7 Discount Auto Sales LLC. Anderson has also admitted to commingling his own private assets with those of the Lucky 7 LLCs, and he often paid KCI with checks drawn from personal accounts.

The first element in piercing the corporate veil is therefore satisfied. Anderson completely dominated and controlled the finances, policy, and business practices of the Lucky 7 LLCs.

**ii. Improper Use**

In Missouri, torts, violation of statutory duties, inadequate capitalization, and the stripping of assets from a corporation are all wrongs that satisfy the second prong of piercing the corporate veil. *See 66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 41 (Mo. 1999); *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997). Actual fraud is not required to justify piercing the corporate veil; violation of statutory duties or inadequate capitalization alone may be sufficient. *See 66, Inc.*, 998 S.W.2d at 41 ("'Inadequate capitalization' means assets that are very small in comparison to known risks associated with the planned corporate enterprise."). The Missouri Supreme Court has stated that "inadequate capitalization is circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others." *Id.*

Anderson does not dispute that he stripped the Lucky 7 LLCs of their assets, and transferred them to himself and others in order to avoid paying KCI as a creditor. Doc. 106-1, p. 19. Anderson also does not dispute that he siphoned the income and profits from the sales and transfers of KCI's vehicles, or caused the Lucky 7 LLCs to become insolvent, and without sufficient capital or income to pay its debts and obligations to KCI. Accordingly, the second element of piercing the corporate veil is satisfied. *See K.C. Roofing Center v. On Top Roofing, Inc.*, 807 S.W.2d 545 (Mo. Ct. App. 1991), (piercing the corporate veil where the defendant "was operating an intricate corporate shell game in which he would cease doing business as one

corporate entity when he was unable to pay the corporation's creditors and he then would form another corporation in place of the prior one in order to get a 'fresh start'")

**iii. Causation**

Finally, KCI has established the requisite causation between Anderson's actions and the harm to KCI. Anderson's siphoning of funds from the sale of KCI's vehicles, and stripping the Lucky 7 LLCs of their assets rendered them insolvent, and caused them to become unable to repay their debts to KCI. *See Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 937 (Mo. Ct. App. 1992) (finding that where defendant's actions rendered the corporation insolvent, it established the requisite injury and causal connection).

All three elements of the test for piercing the corporate veil are satisfied. Anderson completely dominated and controlled the Lucky 7 LLCs, used his control for an improper purpose, and in doing so caused KCI's injuries. *See Dean v. United States*, 987 F. Supp. 1160, 1164 (W.D. Mo. 1997). Accordingly, KCI's motion for summary judgment on Count XIV, piercing the corporate veil, is granted. Alonzo Anderson, Lucky 7 Used Cars, LLC, and Lucky 7 Discount Auto Sales LLC are alter egos of each other, and are liable for each other's debts. Accordingly, Anderson is liable for the $426,831.60 judgment entered against Lucky 7 Used Cars, LLC and Lucky 7 Discount Auto Sales LLC.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's Motions for Summary Judgment, Doc. 105, is granted.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 13, 2017
Jefferson City, Missouri